or arguments not to exceed 15 minutes per side. Stephen Braga, Supervising Attorney for Curie Grazioni, Grazia, Graziazzi, and Shawn Johnson arguing for Petitioner Appellant. Thank you. Good morning, Your Honors. Stephen Braga from the Appellate Litigation Clinic, the University of Michigan. I'd like to introduce two third-year law students, Curie Grazioni and Shawn Johnson, who satisfy the requirements for practice before this Court and who have the consent of our client to split the argument on this appeal this morning. Thank you. Very good. Thank you. Thank you. Good morning, and may it please the Court. My name is Curie Grazioni, and I will be arguing the merits of Mr. Kajuan Hale's due process and ineffective assistance of counsel claims. My colleague, Shawn Johnson, will then argue the standard of review for these claims as well as why the procedural default should be excused. We would like to reserve two minutes of our time. I didn't hear what you would argue. I'll be arguing the merits of Mr. Hale's due process and ineffective assistance of counsel claims. We would like to reserve two minutes of our time for rebuttal here. You may. The crux of this case is the prejudice to Mr. Hale from the prosecution's unremitied misconduct during Mr. Hale's jury trial. This misconduct has caused a disturbing domino effect, and it serves as the basis for Mr. Hale's constitutional claims. First, the prosecution during submission argued to the jury that this case was just quote, young African-American men killing other young African-American men over nothing, and that the jury was partially responsible for solving this quote, epidemic or quote, poison that's going on in society. These statements were improper and prejudicial, and they rose to the level of depriving Mr. Hale of a fair trial, and thus his right to due process. Then Mr. Hale's trial counsel was ineffective and unreasonably failing to object to these clearly improper and numerous statements. And in doing so, this prevented the judge from issuing a curative instruction as a remedy, and also failed to preserve the issue for appeal. And finally, Mr. Hale's appellate counsel was ineffective and unreasonably failing to even consult with his client about the underlying prosecutorial misconduct and ineffective assistance of trial counsel claims. And because of this, those issues were also failed to be preserved on appeal. To this day, due to a combination of state procedural rules and ineffective assistance of counsel, these constitutional claims have never been fully evaluated by a court, and Mr. Hale is yet to receive a fair trial. Mr. Hale's underlying due process claims... Yes, Your Honor. Graziosi. Graziosi, yes. Graziosi. Assuming that we get to the merits, which obviously you hope that we do, eventually we're going to get to EDPA deference in this question, right? Yes, Your Honor. So the last reasoned opinion of the state court, as I understand it, is the Michigan Court of Appeals. Do I have that right? On the prosecutorial misconduct claim? Yes, on the prosecutorial misconduct claim. Yes, on the Michigan State Court of Appeals. So they find that the evidence presented at trial strongly supported the defendant's conviction for murder and that the error didn't affect the outcome of the trial or result in a miscarriage of justice or the conviction of an innocent defendant. We have to give EDPA deference to that conclusion. So explain in a nutshell, if you would please, why that decision violates the very difficult standard that you have to meet under Harrington v. Richter and the other cases that basically say no reasoned person could come to this conclusion. Are you speaking to their evaluation of the prosecutor's comments or the trial counsel's failure to... Merits. The merits of the prosecutorial misconduct claims? Yes. Well, my colleague will talk a little bit more about how we don't necessarily need to give the Michigan State Court of Appeals decision EDPA deference. But even so, if you do decide to give that decision deference, we would say that the court there had an unreasonable application of federal law to the underlying prosecutorial misconduct claim. So basically what happened was because the trial counsel failed to object, that claim was procedurally defaulted. And so the Michigan State Court of Appeals only evaluated those remarks under their plain error standard, which is actually a higher burden to meet than the federal Darden standard. And so the Michigan State Court of Appeals there unreasonably applied the federal standard basically to the underlying prosecutorial misconduct. Ignore for a second your argument, as I understand it, that because they applied a plain error standard, that's not a merits decision. I want you to assume this is a merits decision. I want you to assume that EDPA deference applies. So the court is basically reviewing the strength of the government's case. And the court found that there was plain error here, but it didn't affect the outcome of the trial. We're talking about comments made on one page of a 15-page closing argument. So their decision, it isn't, our task here is not necessarily to determine whether that decision is right or wrong. It's to decide whether it's so wrong as to meet the high deference standard that EDPA imposes. And why are these particular comments so egregious that any fair-minded jurist would understand that the state court decision was an unreasonable application of? Sure. So there seems to be little dispute that the comments themselves are improper. Every court that has looked at these statements gave you that. The question agrees with that. Sure. And so we don't concede that they were one comment on 15 pages of trial transcript as the government included in their brief. In fact, they were quite numerous. They were spread out through the prosecutor's entire summation. They included comments towards racial bias, such as the young African-American men killing other young African-American men. They repeatedly referred to this type of crime as senseless, as an epidemic, as a poison going on in our society. And the prosecutor just continued to disparage the defendant with these types of comments throughout. It's pretty clear that they're outrageous. We're also not conceding that they weren't prejudicial. They were prejudicial, whether you apply EDPA deference or you review the claim de novo. Part of the concern with saying that they weren't prejudicial under the state court's ruling is that because the state court used the plain error standard in making this determination, that just isn't the federal standard here. The federal standard is Darden, and whether or not these comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Here, that's what they did. They prejudiced the jury against the defendant. We have two things to balance against that. One is the curative instruction that said, hmm, this is not evidence, this is not to be considered. That's one. And the other is, wasn't there substantial evidence of your client's guilt anyway, despite the prosecutorial comments the jury had, right? Substantial evidence. Yes, Your Honor. So because the trial counsel failed to object to the improper comments, there was never a specific curative instruction issued to the jury to cure them. However, there was a general jury instruction, and that jury instruction You would think the court needed to do a specific, and what might that be? Sure. So the U.S. Supreme Court in Donnelly v. De Cristoforo said that a proper jury instruction for this type of situation would involve, quote, the judge directing the jury's attention to the remark particularly challenged here, declaring those remarks to be unsupported, and then admonishing the jury to ignore it. And that is similar to what this circuit requires. I believe an instruction like that was given in United States v. Westing. Better than the general jury instruction, which simply said the arguments of both the defense and the prosecution are not to be taken into evidence. Now, I see your time is up, and Judge McKeague, you're getting into your friend's time here. All I wanted to suggest is that when you're waiting to come back up, would you look at your brief, please? Because in the facts section on page 10, you list the section of the closing argument that I understand you're saying was improper. So all I'm trying to figure out when I asked you, what's so bad about this, what did they really say? Then you said, well, it permeates the whole closing argument. It appears as if everything you're complaining about is what you set forth on page 10. So just tell me whether that's right or wrong when you come back up, please. All right. Thank you. May it please the Court. My name is Sean Johnson, and I'll also be representing Mr. Kwon Hale. As my co-counsel noted, we don't agree that the plain error analysis in the state court below means that that claim deserves epidepherence. In this court, what matters is, does the decision include the merits, or does it ambiguously rely on a procedural rule? The Michigan court was clear. They used plain error analysis and then dismissed the prosecutorial misconduct claim because there was not manifest injustice. That's not the same as the federal constitutional standard. Likewise, the – Is it stricter or not? The plain error analysis, it's more strict than the analysis that the court would have used had the claim been preserved on appeal. Well, let's assume that miscarriage of justice is a stricter standard because plain error was being applied, but that's not all the court said. The court said the error didn't affect the outcome of the trial. Yes, Your Honor, but the court, in its analysis of why it didn't affect the trial, was because a curative instruction could have been given that would have not prejudiced the defendant. Now, that's the – Going back to the more explicit instruction that we heard from Ms. Grassheels. Exactly. That's the – That's not exactly what the court of appeals said. The court of appeals said any undue prejudice was cured by the instruction that Judge Cook was referring your co-counsel to a minute ago. I believe that in the actual analysis and when it – what it based its decision on under the plain error analysis and something that Michigan courts do all the time, at least when the issue hasn't been preserved, is simply that a curative instruction could have been given, not just that the general instruction given was enough to cure any issues. Well, you're right that in the paragraph that you're referring to, the second sentence is they said a curative instruction could have been given, but then they go on to say that it was cured by the instruction that was given. Well, Your Honor, even assuming – Again, we have to get by. I know you don't like the epidephrine standard. No habeas lawyer ever does, but we have a spectacular record of being reversed by not giving epidephrine, so we're a little sensitive to that right now. And the second part of that paragraph is you just simply have to agree with it. You have to deal with the second portion of that same paragraph that you're referring to that talks about how it was cured. So we have to determine why is that so wrong – as to violate your client's constitutional rights. Well, in our opinion, we would pass epidephrines as well because of the prejudice caused by the prosecutor's comments. We disagree that curative instructions were enough to have – either curative instructions or the general instruction that was given was enough to cure what happened at trial. There was incredibly weak evidence, as evidenced by the fact there was a hung jury in the first trial. We know that there was – How can you say that there's incredibly weak evidence when – granted, they hung the first time, and then they convicted him of second-degree murder in the second trial. When it seems to me the evidence is largely undisputed that regardless of the circumstances that led to this shooting, the testimony is your guy, once the decedent is on the ground, walks up and shoots him. Keeps shooting him until he's dead. Our position is that that is not necessarily what happened. There were two witnesses that testified to that, but they gave conflicting stories as to what actually happened on the ground, who shot the first shot, where that shot came from. Those two witnesses – You're not talking about who shot who first. No, that's – When he's down on the ground – Yes, Your Honor. – and the witnesses testified, your guy walked up and shot him dead. Yes, Your Honor. I believe they also – The jury obviously bought that. I believe that both witnesses also noted that there was an earlier shot beforehand, but they can't agree where it came from, and you'll notice in the record the physical evidence – I don't understand that argument. Are you saying, well, he was already dead anyway from something earlier? No, Your Honor. I'm sorry. The physical evidence showed that there were ten bullet shells outside at the time, six from one gun, four from another. The first jury actually noticed that and asked a question about that, but it wasn't available in the transcript. The first jury also asked for the actual police statements by those two witnesses because they were so conflicting. You'll also notice in the record – We're not talking about the first trial. We're talking about what the evidence was in the second trial. Correct. And what was the response in the second trial to this testimony that, regardless of how the guy got on the ground, that the petitioner here walked up and continued to shoot him when he's laying on the ground? I believe even if you look at the two witness statements that both said that, they actually disagreed as to what happened once they were both on the ground and afterwards. It's also noticed that one of the two witnesses did not actually pick Mr. Hale out of the lineup. He picked somebody else out and then later on picked Mr. Hale out. The other witness, the one that actually identified Mr. Hale in the first instance, he didn't even show up to the police station until 30 days later. There's a lot of evidence that shows that witness credibility was a big issue here, and then the prosecutor had to find a way to fit all the pieces together because their stories just didn't make sense. Hence, she created a story about African-American men constantly killing each other. That's where the prejudice lie. So in the first trial, it was clear the jury did not pay attention to those statements, and therefore we had a hung jury. The second trial, the jury was, for some reason, more inflamed. Mr. Johnson, we're all approaching this on the view that this claim, the ineffective assistance claim, was unexhausted. Am I correct that there was in the post-conviction, state post-conviction petition, Hale argued he uses the term constituting ineffective assistance of appellate counsel? Okay. So is that sufficient to exhaust or not? Yes, we believe so. In fact, in the post-conviction trial opinion, they also mention the merits of the appellate counsel's ineffectiveness. So clearly there must have been a ruling on that. All right. Thank you. All right. I see my time is up. If there are no more questions? Apparently not. Your Honors, and may it please the Court, Linus Banghart Lynn, Assistant Attorney General for the State of Michigan, representing the Respondent Warden and respectfully requesting affirmance. There are a lot of issues in this case, so I'm going to first respond to a few things. First of all, I think the first thing I'll probably address is something from the reply brief, which is on whether Martinez v. Ryan does anything to weaken Wainwright v. Torna. So this is talking about whether this Court in the Certificate of Appealability asked whether ineffective assistance of appellate counsel for not raising the claim in the Michigan Supreme Court can excuse the procedural default, and it can't. And the reason is because Martinez v. Ryan dealt with a situation that arises under sort of a unique set of circumstances, incidentally not present in Michigan, where a court doesn't allow a defendant to raise ineffective assistance of trial counsel on direct appeal. Michigan does, and defendants routinely do. And so the reasoning underlying Martinez is, if this is going to be the defendant's first bite at the apple, we're going to say that if counsel is inadequate, that that can excuse a procedural default. This would have been Mr. Hale's third bite at the apple. The second one he actually took in his third opportunity to raise prosecutorial misconduct, if he had raised in the Michigan Supreme Court. So the reasoning underlying Martinez doesn't apply here. Wainwright v. Torna applies here. United States v. Nichols, which is a decision from this Court, applies here. And the prosecutorial misconduct claim, the default cannot be excused, and it's not properly before this Court for review. But when you say the default can't be excused, assuming that there was something that was unexhausted here, there's no way to go back and exhaust it now as a practical matter. So we move right to procedural bar. And to do procedural bar, we've got to do cause and prejudice. To do cause, we have to do the Strickland analysis. To find out whether there's deficient performance, then we have to get to whether or not this really was something that was violative of his constitutional rights during the closing argument that should have been objected to, and absent the objection there was ineffective assistance. Don't we at least have to do that analysis? I guess I need to clarify if you're talking about the prosecutorial misconduct claim or the ineffective assistance of trial counsel claim. The ineffective assistance is a failure to object. There can't be ineffective assistance for failure to object unless there was something that needed to be objected to. In this case, that is the prosecutorial misconduct. So we're not talking about a different ineffective assistance claim that's not tethered to the prosecutorial misconduct claim, I don't think. No, that's correct. There are two sort of underlying claims for relief here. One is that the prosecutor's comments by themselves entitle Mr. Hale to relief. And that question is what I'm saying cannot be before this court because of the procedural default. The second claim is that the trial counsel's failure to object entitles Hale to relief. Now that question is before the court, and it does bring in the prosecutorial misconduct claim. So this court can look at prosecutorial misconduct as part of that claim. We have to under the cause and prejudice. Yes. But we have to get to the merits of prosecutorial misconduct, at least in the context of cause and prejudice, right? Not necessarily. I mean, this court can as to the prejudice prong, but the court can also look at the cause prong and say, even if there's a presumption that counsel performs competently. And this court is very reluctant to find that that presumption is overcome when it is a decision made by trial counsel not to draw attention to a comment made in closing argument. And Hale has not overcome that presumption in this case. And so you don't need to really get to the prejudice part of it because you can find no cause because you can find no deficient performance. Now, certainly the court can also address prejudice and can also look at the overwhelming evidence that Hale killed Nelson Hardiman and can look at the Michigan Court of Appeals decision. And as I think Your Honor's questions appear to recognize, right, I hear counsel on the other side saying, well, we disagree. Our position is this. Well, they have a position. I have a position. Your Honors might each have three different positions. But the question is not who agrees and who disagrees. The question is whether the Michigan Court of Appeals merits discussion of this was so outside the realm of reasonableness that no fair-minded person could disagree with it. What will you say about the underlying claim that because it was reviewed under plain error review, therefore it's not a merits decision and therefore you don't get a deference? I think any part of the Michigan Court of Appeals decision that relies on something that's not part of a prosecutorial misconduct claim is not a merits discussion. But they did both. They did talk about the merits and they also talked about the procedural bar. And any part of it that does talk about the merits of the claim, for example, about how this was not outcome determinative because it was a relatively minor comment that did not infect the trial with unfairness, I'm paraphrasing. I don't think that addresses exactly what they're saying because they're saying, yes, the court did address the merits, but through the lens of plain error review, so therefore it doesn't get ad pedeference. I understand. But I think that if you were to strip out everything of the opinion that was in there because of plain error review, you would still be left with enough language in that opinion that could have denied that claim on plenary review. And that language that stands has to be accorded at pedeference. And I think that's plain law from Fleming v. Metrish, which is controlling law in this circuit. Okay. Try one more time. I understand all that. But all I want to know is in that intermediate step, do you agree that if it was reviewed only under the lens of plain error review, not other language that you can say is reviewed under a different standard, does that deprive the state court of ad pedeference because they employed plain error review? Yes. If they employed plain error review and relied solely on plain error review, for example, if they said we're not going to reach the question of whether there was error, we're not going to reach the question of whether it was outcome determinative, we find that under Michigan's fourth prong of plain error review, which I believe mirrors the federal fourth prong, we find that this is not something that should be overturned. In that case, I would say, no, we're not entitled to deference because they didn't reach the actual claim. They employed a solely procedural bar. All right. So your follow-up argument is they did reach the merits. Yes, exactly. Exactly. No, if, yes. I'll speak also to, there's been, I think I heard counsel say at an oral argument, and it was also, I believe, in the reply brief, that faulting the Michigan Court of Appeals for not applying the appropriate federal standard. I think that's a dangerous argument that cuts against the petitioner in this case because if it is true that the Michigan Court of Appeals didn't apply the federal standard, the reason is because the brief to the Michigan Court of Appeals didn't cite the federal standard. The brief didn't cite the United States Constitution or any provision of it, didn't cite any controlling federal law, did not mention the words due process. This was presented as a state law claim. Now, I'm not saying that for that reason it's unexhausted because we didn't say that in the district court, but if Hale is going to say the Michigan Court of Appeals should be faulted for not applying the federal standard, then I think it's a matter of trying to have it both ways, to say, well, I can raise a claim using only state law authority and one non-controlling federal case, but then if the Michigan Court of Appeals decides it without using the federal standard, now I get de novo review. I think it has to be one or the other. Either it wasn't raised as a federal claim, in which case it's not exhausted, or it was raised as a federal claim, in which case that pedeference applies. And I think, and I apologize, there's a lot of issues here. Ineffective assistance of appellate counsel. Now, we've argued, of course, that it can't be reached because of Wainwright v. Torna, but I would also point that the claim has to fail on the merits as well because appellate counsel actually did raise claims that were not clearly weaker than the omitted claims. And, in fact, the omitted claim of ineffective assistance of trial counsel actually is an inherently weaker claim than the claim that appellate counsel did choose to raise, prosecutorial misconduct, because under prosecutorial misconduct, even under a plain error standard, so you have to show that it was outcome determinative, but you would also have to show that under ineffective assistance of trial counsel, but you would also have to overcome the heavy presumption that trial counsel performed competently, that this was a tactical decision not to object and not to draw the attention of the jury to these comments. And so for appellate counsel to raise the inherently stronger claim of prosecutorial misconduct, even on plain error review, and decide not to raise the ineffective assistance of trial counsel claim, that was a strategic decision of appellate counsel, and I think under the U.S. Supreme Court's, the standard under Jones v. Barnes I think is the best case from the United States Supreme Court. They can't overcome that. So you don't even need to get to the prejudice side of ineffective assistance of appellate counsel. This was a reasonable strategic decision that appellate counsel made that a competent and reasonable appellate counsel could have made, and that alone is enough to say ineffective assistance of trial counsel is not there. There are two arguments as well that are not properly before this court because they're not in the Certificate of Appealability, which are the ineffective assistance of appellate counsel for failing to advise and consult with Mr. Hale in the Michigan Supreme Court. That question was not in the Certificate of Appealability. So it's in the briefs, and I would ask the court to stick to the Certificate of Appealability and decline to address that issue. And I would also reiterate the point that we made in our brief, which is that the supposedly racially inflammatory components of the prosecutor's comments were never raised, never raised in the Michigan Court of Appeals, although the Michigan Court of Appeals chose to address them, not raised in the Michigan Supreme Court because nothing was, not raised on state court collateral review at any level, not raised in the petition, not raised in the amended petition, not raised in the R&R, not raised in the objections to the R&R or in the opinion and order, and not raised until this court mentioned them in the Certificate of Appealability and then raised for the first time by Mr. Hale in the opening brief before this court. So I would ask the court to stick to the civic duty component of the argument and not the racial inflammatory, although I think that even under a de novo review stripping away all of these arguments that I have, this is relatively tame stuff, and the Michigan Court of Appeals acted reasonably in holding that it wasn't outcome determinative. I'd be glad to answer any other questions that the panel has. Could you follow up very briefly on your opening remark that there was substantial evidence of guilt here? There was this, I was asking questions, as you heard, about not so much how the initial shots came about, whether there was or wasn't self-defense there. It seemed to me the most damning evidence here was the testimony that after the guy's down, he walks up and shoots him. I agree, Your Honor. In fact, I would say that the evidence, I think in our brief we said there was compelling evidence of first-degree murder. Of course, he was acquitted of first-degree murder, and so I'm not sure how you account for that. I think Menzraya, before that happened, before he shot him while he was lying on the ground, I think that Menzraya was very much in dispute, and I would not have been at all surprised to find him acquitted of first-degree and convicted of second-degree. I've seen many cases where first-degree is charged, but there is sort of a mutual combat, and it ends in the death of the person who started it, and the jury says, well, that looks like second-degree. But then given those facts, I think the fact that he was acquitted of first-degree murder I think is a little surprising, and I think it goes very much to rebut the argument that the jury was poisoned and the passions were inflamed against this defendant. I think the jury took its rule very seriously, and I think the jury followed its oath, and I don't think there's any reason to overcome the presumption that it did. I think that even as to Menzraya, I think there was substantial evidence based on what Your Honor said, and I think the fact, I also need to clarify something. In the reply brief, it accuses me of trying to say that two wrongs make a right somehow. The fact that the prosecutor said this in the first trial makes it better that she said it in the second trial, and that either misunderstands or misrepresents the argument. The argument is not that two wrongs make a right. The argument is that their opening brief started off by saying, we know there was prejudice here, because in the first trial we didn't have these comments. We got a hung jury. Second trial, we did have these comments. We got a conviction. But that's not the facts. The facts were we had the comments in both trials, so we had to point that out to say, you can't show prejudice this way because the comments were present in both trials. In fact, I took pains to say,  We're saying it disproves this particular argument as to prejudice. In the reply brief, I'm accused of trying to say that the two wrongs make a right, and I just need to clarify, that isn't the argument. For those reasons, we request affirmance. I think you've covered it. Thank you, Your Honor. Thank you. Just a few points to address Judge McKeague's questions, and also to address some of the points raised by the government here. I believe Judge McKeague asked, if we were only citing this small part of the transcript, how we can look to the rest of the summation to prove that this was just completely egregious prosecutorial misconduct that prejudiced the jury against the defendant. This also speaks to the government's point that Mr. Hale didn't explicitly quote the race-based prosecutorial misconduct in his claims. We would respond by saying that both Michigan state law and federal law require that the court, when evaluating this misconduct, review the remarks not in isolation, but cumulatively, in the context of the entire trial, including the totality of the prosecutor's comments, the court's instruction to the jury, or lack thereof, as we discussed earlier, and the evidence presented. There's lots of cases that say it's not our job to sort through the record. We read what you cite us to, and you're absolutely correct that we then put that in context, but we don't go looking for other race-based comments, either during the course of direct cross-opening or other parts of the closing. So all I'm trying to figure out is, is this what's on page 10, the crux of your argument? Yes, Your Honor. It's five paragraphs. We're not asking the court to go through the entire record of both Mr. Hale's first and second jury trials. What we're asking is that the court at least look at the summation in its entirety, which is required by federal law. Are you citing us to any other portions of the closing other than what's on page 10? We didn't cite to any other portions of the summation in our brief. However, we do not have to, because federal law requires the court to look at the summation in its entirety. I have my annotated version here of the prosecutor's second closing, and on nearly every page of the transcript of this closing, there's something improper that she's saying. This is just a small bit of it, a small summary of the types of race-based and civic duty-oriented appeals. I just want to make sure you understand, because of the circumstances under which you're here, that to say in a rebuttal argument that, first of all, it's our job to go look at the whole closing, and we're supposed to figure out which things on other pages you say are wrong and figure out why they're wrong, is probably not an argument that's going to get you very far. No, Your Honor. We're not saying that you have to comb through the summation as we have combed through it. We're just saying that these comments have to be taken in the context of the entire summation. And it just speaks to how numerous and how outrageous these comments were, that they weren't singular, they weren't isolated. She made these comments throughout summation. I believe we included information in the brief to that effect. The government here, I see... That's the point. It needs to be given to the court, feed us that. That's Judge McKeague's point. Since you're a student, good to know, right? Yes, Your Honor. And that's the end of your argument. You've finished, haven't you, counsel? Yes, Your Honor. We would be happy to file a supplemental brief pointing out the other areas in the closing. One shot, you're done. All right. Thank you. We don't need a supplemental brief. We have the matter. We'll consider it carefully. Thank you both for your arguments. We appreciate it. Do you have anything to say? Oh, yes. And we recognize that you are doing this on behalf, under the Criminal Justice Act, and the court always appreciates that, and particularly the good work of you students. It's wonderful to have you. Thank you. All right. Thank you very much. Okay. We're ready for the next case.